THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SAMUEL HARRIS, Defendant-Appellant.

Second District   No. 2—90—1392

Opinion filed October 20, 1992.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and David W. Devinger, of Woodstock, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Joseph V. Roddy, of Law Offices of Joseph V. Roddy, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

After a bench trial the defendant, Samuel Harris, was found guilty of first degree murder and unlawful possession of a weapon by a felon. The cause then proceeded to a sentencing hearing at which the death penalty was found to be inappropriate, and the defendant was sentenced to a 100-year term of imprisonment. The defendant argues on appeal that: (1) the victim's statement while in the hospital following her shooting constituted a dying declaration and should have been admissible; (2) the court erred in refusing to allow cross-examination of a witness regarding the content of a statement, a portion of which was introduced during direct examination; and (3) the sentence of 100 years' imprisonment was excessive.

Evidence at trial revealed the following relevant events. On the evening of January 10, 1990, a male assailant, wearing a hooded sweatshirt, entered the apartment of Gail Long. His hood was tied around his face, and he was carrying a 12-gauge sawed-off shotgun. Present in the apartment were Gail Long, her two children, Jamall and Jasmine, ages 10 and 1, and her nephew Frederick Crawford. The assailant grabbed Jamall around the neck and announced, "Gail, I want weed, money or cocaine." Jamall handed his mother her purse and she dumped the contents on the floor. The assailant then said, "Gail, if you don't give me weed *** or money or cocaine, I'm going to shoot your son." The assailant was then pointing the weapon at Jamall's head. Gail Long pleaded with the assailant not to shoot her son, and repeatedly stated, "Please Sam don't."

A curl of hair fell out of the assailant's hood, and he pulled the drawstring tighter and told Gail Long to "shut up." The assailant then indicated that he would count to five and then shoot her if she did not produce the items he requested. The assailant counted to four, shot Gail Long in the stomach and exited the apartment. Gail Long died at 2 a.m. on January 11, 1990, at St. Therese Hospital, from hemorrhagic shock caused by the shotgun wound to her abdomen.

A week after the occurrence, Frederick Crawford viewed four lineups where the candidates were wearing hoods tied tight around their faces. In two of the four lineups, Crawford identified a person who was not the defendant, but noted that the assailant appeared to have a larger upper

body or had something stuffed in his sweatshirt to make him look larger. In the last two lineups Crawford identified the defendant as the assailant.

Roger Eastman testified that he had known the defendant for eight years. He stated that on January 10, 1990, the defendant asked him to obtain a gun for him. Eastman further testified that on that same day he gave the defendant a sawed-off shotgun and a single shell, walked to the apartment building of Gail Long with the defendant, and the defendant told him to wait outside of the building. Eastman testified that after waiting about two minutes he heard a "boom" which sounded like a shotgun discharging, and the defendant ran out of the building. Eastman testified that shortly thereafter the defendant told him that he had needed to shoot somebody in the apartment since the person had been "messing" with him. He also testified that the defendant then returned the shotgun.

Joe Lee White, who was incarcerated in the Lake County jail with the defendant, testified for the State, pursuant to an agreement that he would only be sentenced to three years' imprisonment on a burglary charge that was pending against him. He testified that the defendant related to him the events that occurred on the night of Gail Long's death. White's testimony substantially comported with the testimony of Roger Eastman. White's testimony added, however, that the defendant told him that he had to shoot Long after she recognized him and that he should have "killed all the people," including Eastman.

Officer Richard McKissick testified that he went to the emergency room on January 10 to speak with Gail Long. He testified that he noticed a large wound, approximately three to four inches in diameter, on the right side of her abdomen. She had lost a lot of blood and she was being prepared for a blood transfusion. He also thought that she appeared to be experiencing "a lot of pain." When the defense asked Officer McKissick what Gail Long said to him, the State objected, arguing that her statement was hearsay. The defendant argued that the conversation would have revealed Long's belief as to who shot her and that it constituted a dying declaration, an exception to the rule against the admission of hearsay. The court sustained the State's objection and did not allow Gail Long's statement into evidence.

The defendant was found guilty on all counts, and on September 26, 1990, a sentencing hearing was held to determine his eligibility for the death penalty. The jury returned a finding of eligibility. The cause was continued to September 27, 1990, following the defendant's waiver of a jury, for a hearing on mitigation and aggravation.

In aggravation, Dr. Larry Blum testified that the victim would have experienced pain with the type of injury she had sustained. Also, Joe

Lee White testified that the defendant said that he should have "killed all the people" in the apartment.

In mitigation, numerous witnesses testified. They included relatives, friends, a pastor and a former teacher. Recurrent in the testimony was the defendant's respect for his family and his fondness for children. The court was informed of the defendant's relationship with a cousin, whom he had helped cope with cerebral palsy, and his relationship with a youth afflicted with dwarfism.

Following testimony and arguments, the court found the death penalty to be inappropriate and sentenced the defendant to the maximum extended term of 100 years. The court stated that it took into consideration the fact that there were children present during the crime, the defendant's lack of remorse and the background of the defendant, which included the fact that he was on parole and had a previous armed violence conviction. On November 27, 1990, the defendant filed a motion to reduce the sentence, which was denied after a hearing.

On appeal, the defendant first argues that the court erred in denying admission of Gail Long's statement as a dying declaration and therefore an exception to the hearsay rule. The defendant asserts that although Gail Long was not told that she was dying, and although she failed to express fear of her impending death, she "must have known she was near death." The defendant also requests this court to review testimony adduced at the second phase of the defendant's sentencing hearing and draw the inference that Long was aware of her impending death. The State argues initially the defendant's argument on appeal should be rejected to the extent that it is based on evidence adduced at the sentencing hearing. It also argues that Gail Long's statement does not satisfy the requirements of a dying declaration.

■ A dying declaration is a statement of fact made by the victim, relating to the cause and circumstances of the homicide. (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 907.) To establish a dying declaration, it must appear that the statement was "made by the victim under the *fixed belief and moral conviction that death is impending and certain to follow almost immediately*, without opportunity for repentance and in the absence of all hope of avoidance, when he [or she] has despaired of life and looks to death as inevitable and at hand." (Emphasis added.) (186 Ill. App. 3d at 907.) Additionally, the declarant must be in possession of his or her mental faculties in order to sufficiently understand and relate the circumstances concerning the declaration. 186 Ill. App. 3d at 907.

The question on judicial review of the trial court's denial of admission of a dying declaration is whether the record supports the trial

court's factual determination as to the victim's state of mind. (See *People v. Montague* (1986), 149 Ill. App. 3d 332, 345-46.) Our supreme court has stated that it is " 'reluctant to disturb the ruling of the trial judge on the admissibility of a purported dying declaration.' " 186 Ill. App. 3d at 908, quoting *People v. Odum* (1963), 27 Ill. 2d 237, 239.

In the instant case, the court found that there was not sufficient evidence to conclude that the declarant was in fear of her impending death. It considered evidence that the medical personnel did not advise Gail Long that she was in danger of dying. Moreover, it considered that Gail Long made no statements to the effect that she believed that she was going to die. The fact that the victim was conscious in the emergency room while the medical personnel were preparing her for a blood transfusion belies the impression that nothing could have been done for her condition. Even if we were to consider the testimony adduced at the sentencing hearing regarding her physical condition, we cannot find that the court abused its discretion in not admitting the statement of the victim. See *Odum*, 27 Ill. 2d at 239.

The defendant next argues that the court erred in refusing to allow full cross-examination of Officer McKissick regarding the defendant's voluntary statement. He relies on the fact that a portion of his statement had been referred to on direct examination.

An examination of the record reveals that Officer McKissick, when questioned by the State on direct examination, testified to preparing a report after having a conversation with the defendant about Gail Long. McKissick further testified that after typing the report, which included the defendant's statement, he gave it to the defendant and asked him to make any necessary corrections to the report. Officer McKissick testified that the defendant changed only his birthdate in the report. McKissick also stated the defendant's birthdate to the court. No other material from the defendant's statement was admitted on direct examination. On cross-examination, defense counsel asked Officer McKissick to relate the substance of the statement given by the defendant. The State objected. The court sustained the State's objection and did not allow the defendant to cross-examine Officer McKissick on the substance of the statement made by the defendant.

As a general rule, cross-examination is limited to the subject matter inquired into on direct examination. (*In re W.D.* (1990), 194 Ill. App. 3d 686, 702.) However, a criminal defendant is entitled on cross-examination to develop all circumstances within the knowledge of a State's witness which explain, qualify, discredit or destroy his direct testimony. (194 Ill. App. 3d at 702.) The defendant may do this even though it *"may incidentally constitute new matter which aids the cross-exam-*

*iner's case."* (Emphasis in original.) (194 Ill. App. 3d at 702.) Thus, the Illinois Supreme Court has held that where a conversation is related by a witness, the opposing party has a right to bring out all of the conversation on cross-examination. (*People v. Weaver* (1982), 92 Ill. 2d 545, 556.) This is referred to as the doctrine of completeness. *In re W.D.*, 194 Ill. App. 3d at 703.

With regards to the doctrine of completeness, the Illinois courts have vacillated between two positions. One is that the opposing party has a right to bring out *all* of the conversation on cross-examination, if any of it was referred to on direct examination. (See *Weaver*, 92 Ill. 2d at 556.) The other position is that the opposing party has a right to bring out only those portions of the conversation "on the same subject[s]" brought out on direct examination. (*People v. Kalpak* (1957), 10 Ill. 2d 411, 424; *People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 438.) A recent Illinois Supreme Court case, *People v. Olinger* (1986), 112 Ill. 2d 324, examined its earlier *Weaver* decision and shed light on this controversy.

In *Olinger*, the defendant argued that he was improperly precluded from bringing out exculpatory portions of his statements to the police, where the State had introduced a portion of these statements on direct. (112 Ill. 2d at 337.) The defendant argued that where part of his statement was admitted into evidence by the State, he had the right to introduce the rest of the statement. (112 Ill. 2d at 337.) The *Olinger* court found that this assertion of law went beyond the holding of *People v. Weaver*. The *Olinger* court noted that in *Weaver* the additional details which the defendant sought to introduce were necessary to prevent the jury from being misled by the portion of the statement introduced by the State. (112 Ill. 2d at 337.) The *Olinger* court continued by explaining that the *Weaver* court, thus, held that additional portions of a statement must be admitted when that is necessary to prevent the jury from receiving a misleading impression as to the nature of the statement. 112 Ill. 2d at 337.

The *Olinger* court distinguished its facts from the facts in *Weaver* by noting that *Olinger* did not argue that the statements introduced by the State were misleading, but only that "when *** a statement is admitted[,] the defendant may introduce any other part of [that] statement for any purpose." (112 Ill. 2d at 337.) The court additionally noted that, in effect, the defendant was merely attempting to introduce his own exculpatory statements without having to take the stand. 112 Ill. 2d at 338.

We find that the facts in the instant case are similar to those in *Olinger*. (112 Ill. 2d at 338-39.) The only portion of the conversation relayed on direct examination here referred to the defendant's birthdate.

It in no way misled the jury, and the defendant did not wish to introduce other portions of his statement in order to clarify the statement about his birthdate. Rather, he merely wished to introduce the statement for exculpatory reasons. We find that the trial court did not abuse its discretion in limiting the scope of the cross-examination in question. See *Olinger*, 112 Ill. 2d at 337.

The defendant next argues that the court abused its discretion in imposing the maximum extended term of 100 years' imprisonment. He also asserts that the court erroneously found that the offense was brutal, heinous and indicative of wanton cruelty.

An extended-term sentence may be imposed when the defendant is convicted of a felony and "the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(2).) Absent an abuse of discretion on the part of the trial court, a sentence imposed within the statutory limits will not be disturbed on review. *People v. Andrews* (1989), 132 Ill. 2d 451, 464; *People v. Noble* (1990), 201 Ill. App. 3d 1056, 1058.

■ In the first phase of the defendant's sentencing process, a jury determined that the defendant was eligible for the death penalty. After a hearing on aggravation and mitigation, the trial court found that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The court noted that the murder took place in the victim's home in front of both the victim's 10-year-old child, whose life was threatened, and her one-year-old child. The court also noted the defendant's lack of remorse, recalling the defendant's statement after the murder that he should have "killed them all." The court also took into consideration the defendant's background, including that he was on parole when he committed the murder and that he had a previous armed violence conviction.

Considering all of the circumstances in this case, we cannot say that the trial court abused its discretion in imposing a 100-year extended-term sentence.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and BOWMAN, JJ., concur.