# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Alvarado*, 2013 IL App (3d) 120467**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES ALVARADO, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0467 |
| Filed | August 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 45-year enhanced sentence imposed on defendant for the first degree murder of his wife after she disclosed that she had been unfaithful was upheld over defendant's contentions that the trial court erred in determining that defendant could either use all or none of the video of his interrogation, that allowing the jury to view the video a second time during deliberations was an abuse of discretion and that he was entitled to the day-for-day credit for the 25-year firearm enhancement of his sentence, since the entire video was relevant and playing only a portion would have been misleading, and further, the trial court did not abuse its discretion in permitting the jury to review the video during its deliberations; however, a person convicted of first degree murder is required to serve the entire sentence without any good-conduct credit, and the enhanced part of defendant's sentence is considered part of the sentence for murder. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 06-CF-575; the Hon. H. Chris Ryan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Allen H. Andrews, of State Appellate Defender's Office, of Springfield, for appellant. |
| | |
| | Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Justin A. Nicolosi, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. |
| | Justice O'Brien concurred in the judgment and opinion. |
| | Presiding Justice Wright specially concurred, with opinion. |

**OPINION**

¶ 1    Following a remand for a new trial (*People v. Alvarado*, No. 3-08-0200 (2010) (unpublished order under Supreme Court Rule 23)), defendant, James Alvarado, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)) and sentenced to 45 years in prison. His sentence included a 25-year enhancement because he discharged a firearm which proximately caused the victim's death. Defendant appeals, arguing that: (1) the trial court erred when it determined that he could play either all or none of a video recording of the interrogation; (2) the trial court abused its discretion when it permitted the jury to watch the video recording of the interrogation for a second time during deliberations; and (3) defendant is entitled to day-for-day credit for the 25-year enhancement. We affirm.

¶ 2                                    FACTS
¶ 3    Following the shooting death of defendant's wife, the State indicted him on three counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)). Police conducted a videotaped interrogation after defendant's arrest. In the video, defendant admits to shooting his wife after he learned that she had an extramarital affair. Prior to trial, defendant filed a motion to suppress the video because the police officers had ignored his request for counsel. The trial court granted defendant's motion, and the video was suppressed. The cause proceeded to a jury trial where defendant was convicted of first degree murder. However, on appeal, this court remanded the cause for a new trial. *Alvarado*, No. 3-08-0200.

¶ 4    During the second trial, defendant testified that, while engaging in intercourse with his wife, he noticed that she was behaving differently when performing oral sex. When he inquired into the new technique, she became nervous and evasive. The couple went into their bathroom and continued the conversation while sitting on the floor and smoking cigarettes. Eventually, she admitted to kissing another man while she was at a convention in

Springfield; however, she continued to be evasive about the oral sex technique. Defendant became frustrated and retrieved a loaded pistol from a box in the bathroom closet. He hoped to frighten her so she would tell him the truth. Apparently frightened, she admitted to an affair. Defendant became so upset that he started shaking. Defendant testified that he did not remember what happened next, but he did remember seeing his wife slumped over with a red mark on her chest.

¶ 5 Officer Robert Wood testified that after arriving at the scene, defendant explained that he had learned his wife had had an affair and that he "lost it." Deputy Sheriff Doug Pastirik testified that defendant said he could not believe that he had ruined his life, asked how he could tell his children about the stupid thing that he had just done, and said several times that he had "screwed up."

¶ 6 Defense counsel sought to play the last two minutes of the video of defendant's interrogation with police. That portion showed defendant's reaction to the news that his wife had died. The State argued that the completeness doctrine permitted it to have the rest of the interrogation shown to the jury because the remainder placed defendant's reaction to his wife's passing in perspective. Defendant disagreed and argued that the two-minute portion of the video should not open the door to the rest of the interrogation. The trial court determined that playing only the two-minute portion would be "self-serving" and that the rest of the interrogation included other indicators of defendant's state of mind. Therefore, the court stated that it would not permit defendant to show only the final two minutes; defendant could either play the entire interrogation for the jury or none of it. Defendant decided to show the interrogation, and it was played for the jury during the presentation of defendant's evidence.

¶ 7 In closing argument, defendant argued that he lacked the mental state for murder but that he was guilty of involuntary manslaughter. During its deliberations, the jury requested a transcript of the interrogation. Defendant objected. The trial court decided that, while it would not show the jury a transcript, it would replay the interrogation. After the video was played, the jury continued its deliberation and eventually found defendant guilty of first degree murder. Defendant received a 45-year sentence. The sentence included a 25-year enhancement because while committing the offense of first degree murder, defendant had discharged a firearm that proximately caused the death of the victim. Defendant appeals.

¶ 8               ANALYSIS

¶ 9                 I

¶ 10 Defendant first argues that the trial court erred when it required him to play all or none of the recorded interrogation because a portion of that recording exposed the jury to the fact that he had requested counsel and refused to sign a *Miranda* waiver form. A trial court's decision regarding the admission of evidence is reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52 (2001).

¶ 11 Initially, the State contends that the invited error doctrine prohibits defendant from raising this issue on appeal. Under the invited error doctrine, a defendant is barred from claiming error in the admission of improper evidence where the defendant procured, invited,

or acquiesced to the admission. *People v. Harvey*, 211 Ill. 2d 368 (2004). An accused, therefore, may not ask the trial court to proceed in a certain matter and then contend on appeal that the order, which he obtained, was error. *Id.* Here, while it is true that defendant ultimately decided to present the entire recording to the jury, he did so only after the trial court ruled that he could either play all or none of the recording. By playing the video, the defendant did not procure, invite, or acquiesce to the admission of the evidence. *Ergo*, we can conclude that the invited error doctrine is inapplicable here.

¶ 12　　In this case, the court's ruling on the video was based on the completeness doctrine. That doctrine states that if one party introduces part of an utterance, the opposing party may introduce the remainder or so much thereof as is required to place the part originally offered in proper context so that a correct and true meaning is conveyed to the jury. *People v. Ruback*, 2013 IL App (3d) 110256.

¶ 13　　In the last two minutes of the video, defendant reacts emotionally when he is told that his wife had died. Prior to that time, he had displayed a calmer demeanor as he discussed the shooting with the officers. The trial court determined that the two-minute portion would not present a complete picture of the interview and would be inadequate for assessing defendant's state of mind. We agree that the entire video contains information relevant to defendant's state of mind and playing only the last two minutes would have been misleading. The trial court's ruling was not an abuse of discretion. However, we feel that the better course would have been for the trial court to order that if defendant showed the last two minutes of the interrogation, the State would be able to show the remainder of the video on rebuttal. This would not have prejudiced the State.

¶ 14　　　　　　　　　　　　　　　　　II

¶ 15　　Defendant next argues that the trial court erred when it permitted the jury to rewatch the recording of defendant's interrogation during deliberations. In determining whether to grant or refuse a request by the jury to rehear a piece of evidence, the trial court must determine whether review of the evidence would be helpful or harmful to the jury's deliberations. *People v. McKay*, 138 Ill. App. 3d 446 (1985). A trial court's decision to permit review of evidence during jury deliberations is reviewed for an abuse of discretion. *People v. Miller*, 311 Ill. App. 3d 772 (2000).

¶ 16　　Here, we find that the trial court did not abuse its discretion when it permitted the jury to review the video interrogation of defendant. Defendant's state of mind was at the heart of the case. The interrogation provided valuable information regarding defendant's view of the events leading up to the shooting of his wife, and, as we have noted, it further provided clues to defendant's state of mind. Defendant alleges that the video was harmful because it included defendant's request for counsel and his refusal to sign a *Miranda* waiver. That information, according to defendant, reinforced the jurors' likely perception that he did not cooperate with police because he was guilty. We disagree. Although defendant does ask for counsel and does not sign a *Miranda* waiver, the video clearly shows that defendant is willing to cooperate with police. Therefore, we conclude that the trial court did not abuse its discretion when it granted the jury's request to replay the interrogation during deliberations.

¶ 17                                                III

¶ 18        Finally, defendant argues that he is entitled to day-for-day credit for the 25-year firearm enhancement that was added to his sentence for first degree murder. See 730 ILCS 5/3-6-3(a)(2.1)(West 2006) (mandating day-for-day good conduct credit for certain offenses). Pursuant to section 3-6-3(a)(2)(i) of the Unified Code of Corrections (Code), "a prisoner who is serving a term of imprisonment for first degree murder *** shall receive no good conduct credit and shall serve the entire sentence imposed by the court." 730 ILCS 5/3-6-3(a)(2)(i) (West 2006). However, defendant contends that the 25-year enhancement was separate from the sentence for murder, and, therefore, only 20 years of the sentence are subject to section 3-6-3(a)(2)(i). The State argues that the trial court was correct in stating that defendant must serve 100% of his 45-year sentence.

¶ 19        The question of whether the 25-year enhancement is part of defendant's sentence for murder or a separate offense not subject to the 100% service requirement presents a question of statutory interpretation. In construing a statute, the fundamental rule is to ascertain and give effect to the legislature's intent. *Lambert v. Coonrod*, 2012 IL App (4th) 110518. The most reliable indicator of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. *Id.*

¶ 20        Section 5-8-1(a) of the Code states that "[e]xcept as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations." 730 ILCS 5/5-8-1(a) (West 2006). One of the limitations states that "if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(a)(1)(iii) (West 2006).

¶ 21        We believe that the plain and ordinary meaning of section 5-8-1(a) is that the enhancements provided therein are to be considered part of the sentence. This is made clear by the language of the statute, which indicates that a felony sentence is subject to the limitations provided in that section and that the 25-year term shall be "added" to the term of imprisonment. The word "add" means "to unite or join so as to increase the *** size." The Random House Dictionary of the English Language 22 (2d ed. 1987). Use of the word "added" here suggests that the enhancement increases the size of the original sentence and, in that sense, becomes part of it. Therefore, based on the plain language of the statute, we conclude that the 25-year enhancement was part of defendant's sentence for murder, and, as such, the entire 45-year sentence is subject to the requirements of section 3-6-3(a)(2)(i).

¶ 22                                            CONCLUSION

¶ 23        For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 24        Affirmed.

¶ 25    PRESIDING JUSTICE WRIGHT, specially concurring.

¶ 26    I agree with the majority's conclusion that defendant's conviction should be affirmed. I write separately because I believe the defense waived any error arising out of the exclusion of the edited videotape (defense exhibit No. 4) once the defense made the informed, but strategic, decision to introduce the entire videotape (defense exhibit No. 6). Thus, by offering the entire recording as defense exhibit No. 6, the evidentiary error, if any, constituted invited error by the defense.

¶ 27    It is undisputed the court originally suppressed the entire videotape on the grounds the police improperly continued the conversation with defendant after defendant made a request for counsel. Consequently, during the second trial, the State did not discuss the content or offer the videotape of the recorded interview into evidence.

¶ 28    However, after the State rested its case during the second trial, the defense revealed a new approach with respect to the previously suppressed, videotaped, interview. Looking for guidance from the court, defense counsel announced:

> "It's my position that I do intend to play that portion of the end of the tape, the last two minutes, to the jury and I would want an advance ruling from the court that that doesn't open the door to allow the State to play the whole tape."

¶ 29    After a somewhat informal discussion with both attorneys, the court advised defense counsel that a decision to offer defense exhibit No. 4, the last two minutes of a suppressed interview, could indeed open the door to the admission of the entire videotape by the State under the completeness doctrine. Later in the trial, after considering all of the case law submitted to the court, the court ruled that it would *not* "permit" the jury to receive only the last two minutes of the videotape as the defense had hoped. However, the court advised the defense that the door to the admission of the entire videotape would not be opened if defendant asked the officer to describe defendant's physical reaction to news of his wife's death. After this ruling, defense counsel requested permission to confer with his client at a later point in the proceedings before deciding "how [the defense was] going to proceed."

¶ 30    Obviously, defense counsel had at least three strategic options to discuss with his client. The first option would be to rely on the order suppressing the contents of the videotaped interview. The defense adopted this strategy in the first trial, which resulted in a guilty verdict.

¶ 31    The second option which the court suggested would be for the defense to call an officer to the stand for the purpose of describing defendant's physical reaction to news of his wife's death which took place during the final two minutes of the interview. According to the trial court, this approach would *not* open the door for the State to potentially seek the admission of the entire videotape.

¶ 32    The third option would be for the defense to publish the entire recorded interview and allow the jury to "view" the final two minutes of the recording. The defense argued to the court that defendant's demeanor, as recorded during the last two minutes on tape, constituted persuasive evidence he did not intend to kill his wife. The defense proceeded with this option.

¶ 33 The record reveals counsel had an opportunity to confer with his client regarding the videotape following defendant's testimony. Thereafter, defense counsel advised the court as follows:

> "MR. BERTRAND [defense counsel]: Your Honor, with regard to the suppressed statement, I've had a conversation with my client. I've been talking about this with my client for many weeks. Obviously, I believe that the Court's ruling with regard to defense Exhibit No. 4 is incorrect which is a shortened version of the tape. But in light of the Court's ruling I am, I believe, required–so that the jury is able to view the last two minutes of that tape–the Court's ruling is I have to play the whole thing.
>
> So I've talked to my client. He understands that this is a suppressed statement. He understands that it was suppressed as a result of him being denied an attorney during questioning. It's our intention at this time to waive Mr. Alvarado's constitutional right and publish that tape to the jury.
>
> THE COURT: Mr. Alvarado, you're present in court here. You heard what your lawyer said.
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Okay. You understand that I kept this out. It was my understanding your attorney's talked to you and you made a decision with him that you want to play it?
>
> THE DEFENDANT: That's correct, sir.
>
> THE COURT: Okay. Thank You. State, any problem with that being in by stipulation then?
>
> MR. TOWNE [prosecutor]: If that's their trial strategy and they've talked about it, it's fine with me."

¶ 34 The exchange between the court and counsel makes it clear to me the defense elected to offer defense exhibit No. 6, the entire videotape, rather than presenting the evidence to the jury by asking the officer to describe defendant's reaction for the jury. To me, the court's decision to admit defense exhibit No. 6 as requested by the defense, if error, was invited error.