2022 IL App (2d) 210069-U
No. 2-21-0069
Order filed March 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CF-796 |
| | ) | |
| RODNEY W. CARROLL, | ) | Honorable |
| | ) | Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The evidence was sufficient to prove that defendant committed domestic battery (bodily harm) by slamming a door on his sister's arm during an argument; although defendant claimed that the incident was an accident, the circumstances permitted the reasonable inference that he acted knowingly or intentionally.  (2) The completeness doctrine was not a basis for admission of defendant's hearsay statements to a witness, immediately after the incident, that defendant hurt his sister by accident; defendant's statements would not have clarified his sister's statements to the same witness that defendant had hurt her and would go to jail for it.

¶ 2   Defendant, Rodney W. Carroll, appeals his conviction of two counts of domestic battery

(720 ILCS 5/12-3.2(a)(1),(a)(2) (West 2020)) in connection with an argument with his sister,

Tiffany Rollo, during which defendant slammed her arm in a door.  Defendant contends that the

evidence was insufficient to prove him guilty beyond a reasonable doubt and that the trial court erred in excluding as hearsay his statements immediately after the incident that Rollo's injuries were an accident. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On October 15, 2020, the State indicted defendant on two counts of domestic battery. Count I alleged that defendant knowingly caused bodily harm to Rollo, and count II alleged that defendant knowingly made physical contact of an insulting or provoking nature with Rollo. On December 22, 2020, a bench trial was held.

¶ 5      Before trial, the State filed five motions *in limine*, one of which sought to bar the defense from eliciting defendant's self-serving hearsay statements to the police or other witnesses. The trial court reserved ruling on that motion, but also stated, "[I]f it comes out, I will grant the State's motion." Another motion sought to admit as substantive evidence the 911 call that Rollo made to report the incident. The court also reserved ruling on that motion.

¶ 6      At trial, Rollo did not testify, but a 911 operator testified about a call from Rollo between 9:00 and 9:30 p.m. on September 12, 2020. In that call, Rollo accused defendant of slamming her arm in a door. The State offered the substance of the call as an excited utterance. Over defendant's objection, it was admitted into evidence and played for the jury.

¶ 7      In the call, Rollo reported, "My brother has been staying in my garage without my permission and today he slammed my arm in the door and he refuses to leave." Rollo claimed that defendant was intoxicated. Rollo was heard making statements to defendant during the call, such as, "[G]et out of my face. Go now. Leave now"; "You slammed my arm in the door"; and, "Do you want to push me? You want to beat me up and slam my arm in the door? You are not welcome here anymore." In answer to the operator's questions, Rollo stated that she and her brother were

under the influence of alcohol, but she did not state how much they drank. She claimed that she did not need an ambulance for her injury. Rollo reported that defendant ran off into a field. The call ended when the police arrived at Rollo's home. Rollo's speech on the call was clear and did not sound slurred, and she was able to spell her and defendant's names for the operator and report defendant's birthdate.

¶ 8    Rollo's former boyfriend, Juan Santana, testified that he was at Rollo's Algonquin home during the incident. According to Santana, Rollo lived with her two children and Jacqueline Vavrick, Rollo's and defendant's mother. Defendant was homeless and living in Rollo's garage. Santana testified that he was "hanging out," waiting to watch a movie with the others. Alcohol was consumed, but he was unsure who had been drinking. He denied that he was intoxicated. Defendant argued with Vavrick and then had a second argument with Rollo, who told him to leave. As the argument escalated, Santana left to use the washroom and could hear yelling through the door. He vaguely remembered hearing the words " 'get out,' " but the rest was mumbled or inaudible. When he returned, he saw Rollo and defendant at the front door. Defendant was outside and Rollo was inside. He described what he witnessed:

> "[Defendant] was about 2 feet away from a door, at the front door and he was kind
>
> of—I don't know if he was stumbling or just walked back a couple feet to the left, and
>
> Tiffany was bringing her arm in and yelling, You're going to jail for a long time, A-hole."

The State asked Santana to describe what he saw defendant and Rollo do "at that point in time." Santana responded that Rollo started yelling, "[Y]ou're going to jail now, you're going to jail for a long time, A-hole. You hurt my arm, you hurt my arm." She said this as she pulled her arm back through the doorway. Santana saw defendant "kind of stumbling away a couple feet from where the front door was." Defendant did not return to the home.

¶ 9    On cross-examination, Santana stated that Rollo had consumed more alcohol than he and that she was intoxicated. He admitted that he spoke to the police at the scene and did not mention seeing Rollo's arm in the door. However, he also said that when he spoke to the police, he "just wanted to get out of there." The following colloquy then occurred between Santana and defense counsel:

> "Q. You said you hadn't seen anything. You heard the argument?
>
> A. Yeah, I heard—
>
> Q. And you heard [defendant] say, I didn't do it on purpose—
>
> A. Yes.
>
> Q. —correct?
>
> A. He did.
>
> Q. It was an accident?
>
> MR. MILLER [(ASSISTANT STATE'S ATTORNEY)]: Objection, hearsay.
>
> BY MR. SUDGEN [(DEFENSE COUNSEL)]:
>
> Q. Is that what you told the police?
>
> A. He did keep saying that over and over. That was when he was outside the door.
>
> THE COURT: Okay. It's—if it's offered for the truth of the matter asserted, then it's self-serving hearsay and the objection's sustained.
>
> BY MR. SUGDEN:
>
> Q. Okay. What did you hear [defendant] say that day, if anything?
>
> MR. MILLER: Objection, calls for hearsay.
>
> MR. SUGDEN: I'll withdraw it.
>
> THE COURT: Sustained.

¶ 10    Santana testified that Rollo owed him money and had a civil order of protection against him. Santana denied that he "added to [his] story after [Rollo] got [the] order of protection against [him]." He said that (1) he did not want to "deal with this family at all," (2) the proceedings were "wasting [his] time," and (3) "[he] took a whole day off of work for this garbage."

¶ 11    Algonquin police officer Michael Randall testified that, on the evening of September 12, 2020, he responded to a reported domestic battery at Rollo's Algonquin home. He met Rollo and Santana outside and saw the other residents inside. Vavrick did not cooperate with the investigation. He spoke to Rollo and Santana, both of whom appeared intoxicated. However, they spoke coherently, and he could communicate with them. He took statements from both, and Santana did not mention seeing Rollo's arm in the door. Santana said that he saw only the aftermath of the incident.

¶ 12    Randall looked at Rollo's left arm because she claimed that defendant had slammed it in the door. Randall saw, "[o]n the outside of her left upper arm, *** red marks on the arm and in the center of the red mark, [he] saw a darker purple bruising." According to Randall, the marks were consistent with Rollo's account of having her arm slammed in a door. Randall took two sets of photographs of Rollo's left arm; he took the first set on the day of the incident and the second set the next day. The court admitted both sets into evidence. Randall stated that the red marks were more pronounced, and the bruising was darker than in the photographs.

¶ 13    Randall testified that other officers at the scene looked for defendant in a field adjacent to the townhome building. Randall called defendant's cell phone and had "a few" conversations with him. Each call lasted "a couple minutes on average." Defendant was very polite on the phone; Randall could not assess whether he was intoxicated. Defendant told Randall that "he had never touched [Rollo]." He also said that he was not in the area but in Arlington Heights. However,

defendant soon came out of the adjacent field. On cross-examination, defense counsel asked Rollo if "at all times [defendant] denied that he hurt [Rollo]." The State objected on hearsay grounds, and the trial court sustained the objection.

¶ 14    The court denied defendant's motion for a directed finding. Defendant sought to introduce affidavits from Rollo and Vavrick stating in part that they were intoxicated on the night of the incident and were not reliable witnesses. Rollo averred, "I am not sure how true anything I said that night to the police is true or correct because of the level of intoxication and because of my anger with my brother at the time of the events." She also averred that she was unwilling to voluntarily come to court and testify because she did not feel that her testimony would be truthful or reliable. The court sustained the State's objection to the affidavits based on hearsay.

¶ 15    During closing arguments, the State contended that the evidence showed that defendant intentionally or knowingly slammed Rollo's arm in the door. Defendant responded that the State did not carry its burden to prove that defendant acted intentionally or knowingly; rather, the evidence was simply that Rollo was injured in "an accident between two drunken family members."

¶ 16    The trial court found defendant guilty of both counts of domestic battery. First, the court found that defendant caused the harm to Rollo's arm, noting that Santana saw Rollo pull her arm out of the door and accuse defendant of hurting her arm. Second, the court found that the injury was not accidental. The court remarked, "The police were called, and if this were some sort of an accident, the defendant perhaps would be willing to talk to the police and tell them what happened." Instead, defendant fled, hiding in a field, and later told the police an "obvious lie"— that he was in Arlington Heights. In the court's view, defendant's conduct showed consciousness of guilt.

¶ 17                                II. ANALYSIS

¶ 18                        A. Sufficiency of the Evidence

¶ 19    Defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Specifically, he argues that the Stated failed to establish that he intentionally or knowingly slammed the door on Rollo's arm.

¶ 20    When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Amigon*, 239 Ill. 2d 71, 77 (2010). The critical inquiry is whether the evidence could reasonably support a guilty finding, regardless of whether the evidence is direct or circumstantial. *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and drawing reasonable inferences from the evidence. See *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). "Because the trier of fact is best positioned to judge the credibility of the witnesses and resolve disputes in the evidence, its decision is entitled to great deference." *Lissade*, 403 Ill. App. 3d at 612. We will reverse the defendant's conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 21    As relevant here, a person commits domestic battery when he or she knowingly, without legal justification, causes "bodily harm to any family or household member." 720 ILCS 5/12-3.2(a)(1) (West 2020)). For a battery offense, "the State must prove, as an essential element, that defendant's conduct was knowing or intentional, and not accidental." *People v. Phillips*, 392 Ill. App. 3d 243, 258 (2009). Defendant maintains that the State failed to prove beyond a reasonable doubt that he acted intentionally or knowingly.

¶ 22    The criminal statutes define "intentionally" and "knowingly." A person "acts intentionally" if the "conscious objective or purpose is to accomplish [the] result." 720 ILCS 5/4-4 (West 2020). A person "acts knowingly" if "he *** is consciously aware that" his conduct is "practically certain" to cause the result proscribed by the offense. 720 ILCS 5/4-5(b) (West 2020). Knowledge is a question of fact for the trier of fact to decide *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23. Direct proof of a defendant's knowledge is unnecessary; it can be inferred from the surrounding facts and circumstances. *Id.* "Knowledge may be, and ordinarily is, proven circumstantially." *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001). Likewise, intent can be proved through circumstantial evidence. *People v. Begay*, 377 Ill. App. 3d 417, 421 (2007). Intent may be inferred, for example, from the conduct surrounding the act or from the act itself. *Id.* at 421-22; see also *People v. Masterson*, 79 Ill. App. 2d 117, 127 (1967) (one is presumed to intend the natural and probable consequences of his or her actions).

¶ 23    Viewing the evidence in the light most favorable to the State, we conclude that a reasonable fact finder could have found that defendant acted intentionally or knowingly in causing the charged injury. The evidence shows, and the parties do not dispute, that Rollo's arm was slammed in the door due to the defendant's actions. The bruising on her arm indicated that it was hit with substantial force. Santana testified that he saw Rollo withdraw her arm from the doorway and accuse defendant of slamming the door on her arm. Given that she was arguing with defendant at the time, it is reasonable to conclude that defendant slammed the door in anger as she was reaching through it. Even if defendant did not act with the "conscious objective" of harming Rollo (720 ILCS 5/4-4 (West 2020)), he must have been aware that slamming the door on her arm was "practically certain" to cause bodily harm (*id.* § 4-5(b)). Defendant then fled the scene and lied to the police about his actions, showing consciousness of guilt, which is inconsistent with his

argument that Rollo's injuries were accidental. Under those facts, it was reasonable for the trial court to conclude that defendant acted intentionally or knowingly in slamming the door on Rollo's arm.

¶ 24    Defendant argues that *People v. Lee*, 2017 IL App (1st) 151652, requires that we find the evidence insufficient. We disagree. In *Lee*, the victim, an emergency room nurse, attempted to remove, per hospital policy, the necklace the defendant was wearing. The defendant resisted the victim's efforts, causing a brief altercation during which the defendant, clasping the necklace defensively, jerked his arm. In the process, the victim was struck with the large metal cross on the necklace. The defendant testified that he struggled to keep the victim from taking the necklace, but he denied that he struck her with the necklace. On appeal, the court found insufficient evidence of battery. The court noted that the events as described by the witnesses supported the defendant's argument that the injury was inadvertent. The court concluded that the State could not show that the defendant acted intentionally or knowingly. *Id.* ¶¶ 22. Here, by contrast, the circumstances surrounding the offense, especially the extent of the injuries and defendant's flight from the scene, were sufficient evidence of intent or knowledge. Thus, *Lee* is distinguishable.

¶ 25                    B. Exclusion of Defendant's Statements

¶ 26    Defendant next argues that the trial court erred when it excluded testimony from Santana that defendant repeatedly said that Rollo's injuries were accidental. He contends that, under the completeness doctrine, once the State introduced evidence of the argument between himself and Rollo, he was entitled to introduce the remainder of the argument. The State counters that the completeness doctrine does not allow defendant to introduce his own self-serving exculpatory statements without taking the stand and facing impeachment.

¶ 27    Defendant acknowledges that he forfeited his argument by failing to raise it in his posttrial motion, but he seeks review of the issue under the first prong of the plain-error doctrine.  The plain-error doctrine allows a reviewing court to address a forfeited argument where

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."  *People v. Birge*, 2021 IL 125644, ¶ 24.

The defendant bears the burden of persuasion under either prong.  *Id.*

¶ 28    Generally, "[s]elf-serving statements by an accused are inadmissible hearsay."  *People v. Patterson*, 154 Ill. 2d 414, 452 (1992).  "Such statements are considered inadmissible hearsay because their relevance depends upon the truth of the matter asserted or the declarant's belief in the truth or falsity of the matter asserted."  *Id.*  "The rationale for exclusion is that testimony regarding out-of-court statements made by a defendant after commission of a crime is not competent because the defendant had a motive to fabricate favorable testimony relating to his innocence."  *People v. Vanda*, 111 Ill. App. 3d 551, 558 (1982).  However, such statements may be admissible if a hearsay exception applies.  See *Patterson*, 154 Ill. 2d at 452-454 (analyzing various exceptions).  In the instant case, defendant argues that the completeness doctrine affords an exception to the hearsay bar for his statements that the incident was an accident.

¶ 29    "[A] criminal defendant is entitled on cross-examination to develop all circumstances within the knowledge of a State's witness which explain, qualify, discredit or destroy his direct testimony."  *People v. Harris*, 236 Ill. App. 3d 574, 579 (1992) (citing *In re W.D.*, 194 Ill. App.

3d 686, 702 (1990)). "The defendant may do this even though it 'may incidentally constitute new matter which aids the cross-examiner's case.' " (Emphasis omitted.) *Id.* at 579-80 (quoting *In re W.D.*, 194 Ill. App. 3d at 702). Under the completeness doctrine, " 'where a conversation is related by a witness, the opposing party has a right to bring out all of the conversation on cross-examination.' " *People v. Weaver*, 92 Ill. 2d 545, 556 (1982) (quoting *People v. Nakutin*, 364 Ill. 563, 571 (1936)). However, the exception is not without limitation. "The mere mention of a conversation or statement does not entitle the opponent to bring out its content." *Patterson*, 154 Ill. 2d at 454. See *People v. Harman*, 125 Ill. App. 3d 338, 342 (1984). To be admissible, the statement must be necessary to (1) prevent the trier of fact from being misled, (2) place the omitted portion in proper context so that a true and correct meaning is conveyed, or (3) shed light on the meaning of the evidence already received. *People v. Craigen*, 2013 IL App (2d) 111300, ¶ 45; see also *Patterson*, 154 Ill. 2d at 453 ("The completeness doctrine permits an opposing party to introduce the remainder of an utterance or writing, so much as is required to shed light on the meaning of the evidence already received"). Thus, the admission of evidence under the completeness doctrine is limited to evidence that is relevant, material, and concerns the same subject at the same time. *People v. Ward*, 154 Ill. 2d 272, 312 (1992). The parties rely primarily on two cases to illustrate application of the rule.

¶ 30    Defendant relies primarily on *Weaver*. There, in a prosecution for the murder of the defendant's husband, the defendant's next-door neighbor testified that the defendant knocked on her door in a panic and stated that there was a fire in her home and that two men with guns had also entered her home. However, on the State's motion, details about what the defendant said about the two men were excluded as hearsay. The defendant, who did not testify at trial, argued that, due to the court's limitation on the neighbor's testimony, the jury "may have been misled into

thinking that [the defendant] had given no detail about the men she claimed had entered her home" which, under the circumstances, "may have made jurors more likely to believe that her story was false." *Weaver*, 92 Ill. 2d at 556. Our supreme court agreed that the neighbor should have been permitted to testify about the details provided by the defendant, "[i]n view of the possibility that the jurors would be misled into thinking that the defendant has said nothing else." *Id.* at 556-57. See also *People v. Alvarado*, 2013 IL App (3d) 120467, ¶¶ 12-13 (affirming the trial court's ruling under the completeness doctrine that it would be misleading to play for the jury only a portion of the defendant's videotaped interrogation, as it "would not present a complete picture of the interview and would be inadequate for assessing defendant's state of mind").

¶ 31    The State relies on *People v. Olinger*, 112 Ill. 2d 324 (1986), which illustrates limitations on the doctrine. There, the State introduced evidence that the defendant in a murder case told the police that he had been part of a " 'drug triangle' " and admitted to a burglary that involved the theft of several guns, one of which was linked to the subsequent murder of the two victims. *Id.* at 335. However, the defendant was not allowed on cross-examination to bring out exculpatory portions of the same statements. In particular, the defendant was not allowed to elicit that, immediately following his admission to the burglary, he said that a third party took the gun, which would later be used in the murders. *Id.* at 338.

¶ 32    Defendant argued on appeal that that the omission could have given the jury the mistaken impression that he admitted to possessing the murder weapon. The supreme court declined to consider this argument, regardless of its potential merit, because the defendant did not raise it below. The court further held that the argument defendant did raise below had no merit. Rather than identify a particular statement he wanted to introduce and explain why it should be admitted, the defendant "asked generally to allow in *all* exculpatory portions of [his] statements" to the

police. (Emphasis in original.) *Id.* That argument failed because defendant did not demonstrate that the portions of the statements introduced by the State were misleading. Instead, "[h]e argued merely that when part of a statement is admitted the defendant may introduce any other part of the statement for any purpose." *Id.* at 337. The court emphasized that *Weaver* did not stand for such a broad principle:

> "Defendant, in effect, attempted to introduce his own exculpatory statements without having to take the stand and face impeachment. *Weaver* does not approve such a result. A defendant has no right to introduce portions of a statement which are not necessary to enable the jury to properly evaluate the portions introduced by the State." *Id.* at 337-38.

The court emphasized that the defendant failed to develop in the trial court a proper argument under *Weaver*:

> "The trial court need not *sua sponte* scrutinize the proffered statements to determine if there may be a rationale to admit some small portion thereof. It is defendant's responsibility to specify what portion of the statement is necessary for the purpose approved in *Weaver*. Defendant here did not meet that responsibility." *Id.* at 338.

Notably, there is no indication that the defendant in *Olinger* argued plain error on appeal.

¶ 33 *Patterson* also illustrates the limits of the completeness doctrine. There, the defendant sought to introduce photographs showing that he wrote, on a bench in a police interview room, remarks accusing the police of coercing him into giving statements. The supreme court held that the completeness doctrine did not apply because the remarks written on the bench "were not the remainder of his statements to police." *Patterson*, 154 Ill.2 d at 453-54. The court explained that, while they referenced the defendant's statements to the police, the remarks written on the bench "represented a separate statement, made at a different time, presumably to a different audience,

and concerning a different subject." *Id.* at 454. See also *People v. Stackhouse*, 354 Ill. App. 3d 265, 273 (2004) (the completeness doctrine did not support the State's introduction of the remainder of a witness's statement of which a portion was introduced by the defendant as a prior inconsistent statement to impeach a State witness; the remainder did not shed light on the portion that was introduced); *Harris*, 236 Ill. App. 3d at 580-81 (when a police officer testified only to the defendant's birthdate as stated in a report containing the defendant's statement, the remainder of the report was not admissible for completeness because the defendant offered not to clarify the birthdate but for exculpatory purposes); *Harman*, 125 Ill. App. 3d at 342 (the completeness doctrine "does not apply if the testimony to which reference was made was not a part of the conversation the opposing party is attempting to introduce on cross-examination").

¶ 34    Generally, the case law involving the completeness doctrine involves situations where the defendant's statement is offered by the State and the defendant then seeks to introduce his or her full statement or related exculpatory statements. Often, the circumstances involve statements in police custody. The instant case presents a different situation. Here, the State introduced, through Santana, Rollo's side of her exchange with defendant, in which she yelled, "[Y]ou're going to jail now, you're going to jail for a long time, A-hole. You hurt my arm, you hurt my arm." Defendant sought to elicit his side of the argument, namely his statements that Rollo's injury was an accident. The State argues that defendant was seeking not to clarify the meaning of Rollo's statement but to introduce, as in *Olinger*, self-serving exculpatory evidence without being subject to cross-examination. We agree. What distinguishes this case from *Weaver* is that the State never introduced defendant's statements through Santana's testimony. Thus, defendant was not attempting to clarify his own admitted statements. Nor did he seek to introduce additional

statements from Rollo to clarify her admitted statements. Thus, the completeness doctrine does not apply, because defendant offered nothing by way of *completing* what was in evidence.

¶ 35    Nevertheless, defendant argues that his statements were necessary to clarify Rollo's accusation and show that he did not make an admission by remaining silent. But the record is clear that as she pulled her arm back through the doorway, Rollo yelled that defendant hurt her arm and that he was going to jail. Defendant's statements would have done nothing to clarify whether Rollo meant that her arm was hurt; her words were not ambiguous. Defendant's argument "is essentially a disagreement with an interpretation of the published portion of the [conversation], not that the statement misled the [fact finder]." *People v. Viramontes*, 2021 IL App. (1st) 190665, ¶ 55. Thus, defendant wished to introduce his side of the conversation for purely exculpatory reasons. Under *Olinger*, defendant's statements were purely self-serving testimony that he sought to introduce without subjecting himself to cross-examination. See also *State v. Gunther*, 248 S.E.2d 97, 99-100 (N.C. App. 1978) (the defendant was barred from introducing self-serving hearsay statement he made to a witness when the State did not introduce any of the defendant's statements). Because there was no error, there was no plain error, and thus, the forfeiture stands. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Accordingly, we affirm.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 38    Affirmed.