2020 IL App (1st) 170224-U

No. 1-17-0224

Order filed March 6, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 60208 |
| | ) | |
| JOHN GONZALEZ, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, Presiding. |
| | ) | |

_____

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm defendant's conviction for aggravated discharge of a firearm over his contention that the evidence was insufficient to prove him guilty beyond a reasonable doubt. We remand for a new sentencing hearing where defendant's sentence for aggravated discharge of a firearm was based upon a prior conviction in an unrelated case for aggravated unlawful use of a weapon (AUUW), where the AUUW statute was found to be facially unconstitutional.

¶ 2     Following a bench trial, defendant John Gonzalez was convicted of aggravated discharge

of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2016)) and sentenced to 13 years in prison. On

appeal, defendant contends that: (1) his conviction for aggravated discharge of a weapon should be reversed where the State presented no argument or evidence that he knew or reasonably should have known the building at 9222 South Brandon was occupied at the time of the shooting; (2) he was not proven guilty of aggravated discharge of a firearm beyond a reasonable doubt when the only person who identified him demonstrated difficulty with his memory, contradicted himself at trial, made an unreliable identification, and had a motive to lie; (3) he is entitled to a new sentencing hearing where a void *ab initio* prior conviction for aggravated unlawful use of a weapon was used to sentence him as a Class X offender for his conviction of a Class 1 offense; and (4) alternatively, his mittimus must be corrected to reflect the sentence imposed. For the following reasons, we affirm the defendant's conviction for aggravated discharge of a firearm but reverse the trial court's sentencing order and remand for a new sentencing hearing.

¶ 3                                                    BACKGROUND

¶ 4     On May 3, 2015, at approximately 1:00 a.m., shots were fired at a house at 9222 South Brandon in Chicago. The following evidence was adduced during a bench trial which began on March 3, 2016.

¶ 5     On March 3, 2016, Olga Hernandez testified that she was in the second-floor bedroom of her two-story home at 9222 South Brandon at the time of the May 3, 2015, shooting. After being presented with an exhibit depicting the home from the outside and inside, she testified that on the first floor, there is a window at the front of the home, a living room and a bedroom near the front of the home, and a bathroom and kitchen near the back of the home. She stated that her nephew, Ricardo Blanco, and her son, Juan Alvarez, were also at home at the time of the shooting. Hernandez testified that she heard gunshots but did not see who was shooting at her home and

did not see any vehicles. As a result of the shooting, there were a number of bullet holes left throughout her home which were also shown in the photo exhibits. The police arrived approximately 30 minutes later and spoke with her and her nephew Blanco.

¶ 6    On May 20, 2015, Hernandez went to the police station to identify possible offenders. She testified that after she was shown a photo array, she identified a suspect because he looked familiar from "around the block, the neighborhood." The State stipulated that the photo Hernandez picked out was not a photo of defendant. Hernandez testified that she had never seen defendant prior to the date of trial in court and that she did not know anyone personally by the name of "Johnny Five" but that she had heard the nickname used many times.

¶ 7    Hernandez also testified to several other incidents that occurred at her home. On April 4, 2013, she was coming home from work in the afternoon and observed kids in the alley who threw bricks through her window. She called the police and two of them were arrested and she later went to court to testify regarding that matter. Also, on the evening of July 20, 2014, she heard two men in the back of her home repeating the words "Count Love." She called the police and the men were arrested.

¶ 8    Ricardo Blanco testified that in December of 2015, he was shot in the head in an incident unrelated to the shooting in this case. He stated that at the time of the shooting on May 3, 2015, he was living with his aunt, Hernandez, at 9222 South Brandon. He testified that he had prior felony convictions for possession of a controlled substance and aggravated battery involving a police officer.

¶ 9    Blanco testified that at the time of the shooting on May 3rd, he was in the living room in the front of the home watching the Mayweather/Pacquiao fight when a car drove by the home

and the occupants began "yelling some stuff outside." He looked at them and they left. Approximately 20 minutes later, they came back and started shooting into the home. Blanco testified that the people in the vehicle could see inside the home. They started shooting into his bedroom first, which was right next to the living room. He thought he was going to get hit so he went down on the floor. They then started shooting into the second floor of the home. Blanco testified that was when he looked outside and saw the shooter who he identified in court as defendant and indicated that defendant's nickname was "Johnny Five." Blanco also stated that he had seen defendant prior to May 3rd at a liquor/food store and defendant told Blanco that he should not go where defendant goes. Blanco responded that he did not care and would go anywhere.

¶ 10     Blanco testified that at the time of the shooting, he could see defendant from his head to his waist and that defendant was hanging out the window of the passenger front seat of the four-door vehicle and shooting at the house with a gun. Blanco testified that the vehicle was old and was either gold or yellow. Blanco also testified that the driver was "light-skinned" but he could not see him because defendant was in front of him.  He stated that the house was damaged as a result of the shooting.

¶ 11     Blanco stated that after the shooting, the police came to the home and while they were talking to his aunt, he told them that he "was upset at how people went and shot the place."  He informed the police that he was present during the shooting, and that he saw the shooter.  When asked to identify the officers that arrived at his home on the day of the shooting, Blanco initially testified that one was Mexican, and one was white, and he later testified that they were Black females.

¶ 12    Blanco testified that although he informed the officers on the day of the shooting that defendant was the shooter and that another person, Abraham Gonzalez[1], was the driver of the vehicle, he could not really see the driver because he was on the opposite side.  He could only see the person on the right side of the vehicle.

¶ 13    Blanco testified that approximately three weeks after the shooting, on May 26, 2015, the police came to his home and Blanco gave them the bullets that he recovered from throughout the home.  He also identified defendant from a group of photos provided to him by the police as "Johnny Five."

¶ 14    Blanco testified that when he was in high school, he was a member of a gang called "2-6", and that his cousin, Alvarez, was also a member of that gang while in high school.

¶ 15    Juan Alvarez testified that he was convicted of murder in 1991 and served a sentence.

¶ 16    Alvarez testified that he lived at 9222 South Brandon and was home at the time of the shooting but did not see who was responsible for the shooting. On April 4, 2013, in an unrelated incident, while he and his mother were home, some men started throwing bricks at his home.  He approached them, started fighting, and got hit with a brick.  While they were fighting the men were saying "Latin Counts" and "Count Love."  The men were arrested, and Alvarez testified against them.

¶ 17    Officer Tim McFarlane testified that he went to the 9222 South Brandon address on May 20, 2015.  When he arrived, he observed multiple bullet holes through the front window of the home and observed a lot of patched drywall over holes in the walls.  He also observed what

---

[1] On May 8, 2016, the State filed a *nolle pros* motion to remove Abraham Gonzalez from the case.

appeared to be bullet holes on the upstairs level of the home and a hole in the rear window off a kitchen.

¶ 18    After Officer McFarlane spoke with Blanco and received what he believed to be seven bullet slugs, he placed them into an evidence bag.  He did not observe Blanco take the bullets from the walls.  He also ordered an evidence technician to come to the home and take photos of the bullet holes, which he identified in court.

¶ 19    Officer McFarlane testified that Blanco told him that defendant was the driver of the vehicle involved in the shooting and that he saw defendant.  He also told Officer McFarlane that he was in the bedroom when the shooting occurred and that he saw one vehicle.

¶ 20    Sergeant Daniel O'Conner testified that when showing the photo array to Hernandez and Blanco, he was acting as an independent administrator in this case and that in that capacity, he did not have any information regarding the case.  When he met with Hernandez on May 20th, and with Blanco on May 26th, he did not know that there were multiple incidents related to the home at 9222 South Brandon.

¶ 21    On May 20th, Hernandez viewed a photo array and indicated that she recognized someone in the photos as "Johnny Five." During the identification process, Hernandez also informed Sergeant O'Conner that she had forgotten her glasses and she could not be certain of her identification without them.

¶ 22    Sergeant O'Conner met with Blanco on May 26th who viewed a photo array. Blanco identified a man in one of the photos who he stated was driving a Jeep Cherokee on one of the occasions that his home was involved in a shooting.

¶ 23    Officer Takia Washington, testified that on May 3, 2015, at approximately 1:00 a.m., she and a fellow officer received a call that a home at 9222 South Brandon had been "shot up." When she arrived at the home approximately 15 minutes later, Hernandez and two of her relatives were present. Hernandez informed her that she was looking out of the window and observed two vehicles coming down the street, a Jeep and a Cavalier. They began to slow down as they approached her home and "shot up" her house. Hernandez informed Officer Washington that she knew them from prior occurrences. Hernandez informed Officer Washington that she dove to the floor as the shots were fired, then she looked out of the window and saw the cars speeding off. Officer Washington stated that Hernandez gave her a license plate number and told her that there were three people that she associated with the vehicle, one of which was defendant. Hernandez also provided Officer Washington with information regarding prior incidents at the home.

¶ 24    After reviewing the General Offense Case Report, which she had written immediately after the occurrence, Officer Washington further testified that if there were other occupants in the home that did not want their names in the report there are circumstances in which they would not have been listed, but it depended upon the type of case. She stated that she did not speak with any of the surrounding neighbors.

¶ 25    Officer Washington testified that Hernandez's two relatives did not want to provide their names because they did not want to be involved in the official police investigation. The two family members, "explained to [her] their knowledge of the locations of where the defendants lived and where they hang out and who they were and why they might want to shoot up the home." They told her that this "ongoing problem" is how they became familiar with who did the

shooting at Hernandez's home. They provided Officer Washington with a description of how she could possibly find defendant. When Officer Washington asked them if they were at the home at the time of the shooting, they told her they did not want to be documented in a public police report. Officer Washington observed gunshot holes in the house but did not recover any casings or slugs.

¶ 26    After all the evidence was presented, the trial court admonished defendant of his Fifth Amendment rights, and defendant responded that he did not wish to testify.

¶ 27    On July 6, 2016, the trial court found defendant guilty, stating, "I've reviewed the evidence, the arguments, taken into consideration the testimony. *** And although there were other witnesses to the offense, really the - - - the State's case rises and falls on the testimony of Ricardo Blanco. * * * [M]y evaluation of his testimony, which is to me, clear and convincing. * * * The State's evidence establishes beyond a reasonable doubt, that the Defendant - - there's a finding of guilty."

¶ 28    On October 11, 2016, defendant filed a motion for new trial, generally asserting discovery violations, violation of his right to a speedy trial and the trial court applying the incorrect standard of review, which was denied. The trial court sentenced defendant to 14 years in the Illinois Department of Corrections. Defendant filed a motion to reconsider his sentence and the trial court reduced defendant's sentence from 14 years to 13 years.

¶ 29                                    DISCUSSION

¶ 30    On appeal, defendant contends that his conviction for aggravated discharge of a weapon should be reversed because the State did not present any argument or evidence that he knew or

reasonably should have known the building at 9222 South Brandon was occupied at the time of the shooting. Thus, all the elements of the offense were not proven beyond a reasonable doubt.

¶ 31    Prior to addressing the merits of this argument, we will address defendant's position that the appropriate standard of review is *de novo*. Defendant, citing *In re Ryan B.*, 212 Ill. 2d 226, 232 (2004), argues that the appropriate standard of review is *de novo* because he "does not question the credibility of any witnesses, but instead questions whether the uncontested facts sufficiently prove the elements of the offense." We disagree. The very premise of defendant's appeal is that the only person who identified him, Blanco, demonstrated difficulty with his memory, contradicted himself at trial, made an unreliable identification and had a motive to lie. Because defendant attacks Blanco's credibility, we will not review this issue *de novo*.

¶ 32    Turning to the merits, "[W]hen reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotations omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). "This standard of review applies * * * regardless of whether the defendant receives a bench or jury trial." (Internal quotations omitted.) *Id.*, at 114. "This court will not retry a defendant when considering a sufficiency of the evidence challenge." *Id., at* 114–15.  Therefore, "a conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id*., at 115.

¶ 33    In this case, the trial court found defendant guilty of aggravated discharge of a firearm pursuant to section 5-24-1.2(a)(1) of the Illinois Code of Criminal Procedure (Code) (720 ILCS 5/24-1.2(a)(1) (West 2016)).  A person commits aggravated discharge of a firearm when, in

violation of section 5-24-1.2(a)(1), "he or she knowingly or intentionally: (1) discharges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building." *Id.*

¶ 34 A defendant acts knowingly if he is consciously aware that his conduct is practically certain to cause injury. 720 ILCS 5/4–5(b) (West 2016); *People v. Moore,* 358 Ill. App. 3d 683, 688 (2005). A person acts intentionally when his conscious objective is to accomplish a result or engage in the proscribed conduct. 720 ILCS 5/4–4 (West 2016). Knowledge of a material fact includes awareness of the substantial probability that the fact exists. 720 ILCS 5/4–5 (West 2016). It is well settled that a person is presumed to intend the natural and probable consequences of his deliberate acts. *People v. Dorn*, 378 Ill. App. 3d 693, 698 (2008) (citing *People v. Varnell,* 54 Ill. App. 3d 824, 827 (1977)).

¶ 35 A mental state is seldom proved by direct evidence and must generally be inferred from the surrounding circumstances, including the actions of the defendant. *People v. Lissade,* 403 Ill. App. 3d 609, 613 (2010); see also *People v. Maggette*, 195 Ill. 2d 336, 354 (2001) (Criminal intent is a state of mind that not only can be inferred from the surrounding circumstances, but usually is so proved).

¶ 36 Defendant argues that Blanco's speculative statement that the person shooting could see inside the house and that he was watching television at the time, and the photographs of the home taken several weeks after the shooting, cannot establish the *mens rea* element of this crime.

¶ 37 In this case, the State presented evidence that defendant shot into the home located at 9222 South Brandon from a moving vehicle at 1:00 a.m. The judge heard testimony that Hernandez, Blanco and Alvarez were at home at the time of the shooting; that there were bullet

holes throughout the first and second floors of the home, including the living room, kitchen, bathroom and bedrooms; and that bullets were recovered throughout the home. Officer Washington also testified that she arrived on the scene approximately 15 minutes after the shooting and Hernandez, Blanco and Alvarez were there when she arrived. Blanco testified that he was in the living room, which is in the front of the home, watching television at the time of the shooting and that not only did defendant shoot into the living room, but he also shot into the bedrooms on the first and second floors. Hernandez testified that she was on the second floor in her bedroom when the shooting began and she dove onto the floor to avoid getting shot. Additionally, Blanco saw defendant hanging out of the window of the vehicle with a gun.

¶ 38    Based upon the evidence presented at trial, the trial judge could have inferred that defendant had the requisite mental state to know that someone could have been occupying their bedroom at 1:00 a.m. in the morning and that the light from the television Blanco was watching was visible from the outside. See *Lissade,* 403 Ill. App. 3d at 613 (A mental state is seldom proved by direct evidence and must generally be inferred from the surrounding circumstances).

¶ 39    Both parties rely on *People v. Rodriguez*, 2014 IL App (2d) 130148, in support of their various positions. In *Rodriguez,* the court analyzed whether defendant "knew or reasonably should have known" that at the time of the shooting, the surrounding buildings were occupied. The *Rodriguez* defendant argued that he lacked the requisite mental state because he intended to shoot at rival gang members walking along the street and the State had not proven beyond a reasonable doubt that he knew or reasonably should have known that the surrounding buildings were occupied. The court concluded that there was "sufficient circumstantial evidence to support this element." *Id., at* ¶ 53-58 (citing *People v. Schmidt,* 392 Ill. App. 3d 689, 702 (2009))

(whether the defendant acts knowingly may be inferred from circumstantial evidence, and inferences as to the defendant's mental state are a matter particularly within the province of the jury). In *Rodriguez*, the shootings occurred around 3:30 p.m. on the Saturday of a holiday weekend in a residential neighborhood; two neighborhood residents testified that they were outside in front of their homes at the time; the owner of one of the damaged homes testified that his tenants were home; another resident of another damaged home, testified that he, his parents, and his girlfriend were in the house at the time of the shooting and his testimony was corroborated by a police officer that saw him there shortly after the shooting. *Rodriguez*, 2014 IL App (2d) 130148, ¶ 57. We believe *Rodriguez* supports the State's position.

¶ 40    We conclude that, in examining the evidence in the light most favorable to the State, a rational trier of fact could have inferred that defendant knew or reasonably should have known of the presence of people inside the 9222 South Brandon home at 1:00 a.m. *Rodriguez*, 2014 IL App (2d) 130148, ¶ 57 (citing *People v. Jordan,* 218 Ill. 2d 255, 270 (2006)).

¶ 41    Defendant also contends that the State failed to prove him guilty of aggravated discharge of a firearm beyond a reasonable doubt because Blanco, the only person who identified him, demonstrated difficulty with his memory, contradicted himself at trial, made an unreliable identification, and had a motive to lie. We will review defendant's arguments related to Blanco's memory, rambling and contradictory statements within the reliability of identification factors set forth in *People v. Slim*, 127 Ill. 2d 302, 307 (1989), (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

¶ 42    The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by defendant. *People v. Siguenza–Brito,* 235 Ill. 2d 213, 228 (2009). In

a bench trial, as occurred here, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, weigh the evidence and draw reasonable inferences therefrom, and resolve any conflicts in the evidence. *Siguenza–Brito,* 235 Ill. 2d at 228; *Slim*, 127 Ill. 2d 302, 307 (1989) (citing *People v. Berland*, 74 Ill. 2d 286, 305-06 (1978)). An identification may be positive even though the witness viewed the accused for a short period of time. *People v. Wehrwein*, 190 Ill. App. 3d 35, 39-40 (1989). The sufficiency of the opportunity to observe is for the trier of fact to determine. *Id.*

¶ 43    A reviewing court will not reverse a conviction simply because the defendant claims that a witness was not credible. *People v. Evans,* 209 Ill. 2d 194, 211–12 (2004). On review the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt. *Rodriguez*, 2014 IL App (2d) 130148, ¶ 57 (citing *Slim*, 127 Ill. 2d at 307).

¶ 44    In assessing the circumstances to be considered in evaluating identification testimony our supreme court has adopted the guidelines set forth by the United States Supreme Court in *Neil v. Biggers*: (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Slim,* 127 Ill. 2d at 307-08. In this case, defendant contends that the first, second, fourth and fifth factors weigh in his favor and that the third factor is not implicated.

¶ 45    We find that all five factors enunciated in *Biggers* have been satisfied in this case to establish a reliable identification.   Regarding the first, second and fourth factors, defendant

argues that the darkness, stress of the event, the timeframe of the event, and other factors suggest that Blanco had little opportunity to reliably see the shooter. We disagree. Although, it is true that Blanco's self-admitted memory challenges created some confusion with his word choices, it did not create confusion about his identification of defendant as the shooter. Blanco testified that the vehicle passed the home twice, at approximately 1:00 a.m., while he was in the living room, which was at the front of the house, watching a boxing match on television. The first time the vehicle drove by, defendant and the driver yelled something at the house, and Blanco looked at them and they kept driving. Approximately 20 minutes later, the vehicle drove by a second time, and defendant began shooting into the first floor and then the second floor of the home. Blanco testified that when defendant began shooting into the second floor, he looked out the window and saw defendant hanging out the passenger side of the car, with his head, torso and arms exposed, hanging out the window with a gun. Blanco testified that although defendant's hair was different in court, he was able to pay attention to and recalled defendant's face. Contrary to defendant's argument, Blanco was clear that he remembered defendant's body and his face. Blanco also testified that he had met defendant previously at a place where they sold food and alcohol and defendant told Blanco he needed to stay away from certain areas defendant frequented.

¶ 46     In addition, the photo exhibits indicate that the front of the home and the room where Blanco testified he was located in at the time of the shooting, was very close to the sidewalk and there is nothing obstructing the view from the front of the home to the sidewalk. He did not testify, nor was there any evidence that anything was obstructing his view of the street. Furthermore, Blanco testified that he had encountered defendant previously at a grocery/liquor

store. Based upon the foregoing, we believe that the first, second and fourth factors establish a reliable identification.

¶ 47    Defendant also contends that the third factor, the accuracy of the witness' prior description of the criminal, is not implicated here. That is incorrect. The record reflects that Blanco described defendant to police as the shooter immediately after the shooting and gave them a nickname.

¶ 48    Regarding the fifth factor, approximately three weeks after the shooting, Blanco identified defendant in a photo array as the shooter. As such, we reject defendant's contention that this period of time impacted the reliability of Blanco's identification. Where two-year lapses of time between the crime and the identification have been upheld (*Slim,* 127 Ill.2d at 313–14; *People v. Wardell,* 230 Ill. App. 3d 1093, 1098 (1992)), we find that the passage of 23 days did not adversely affect the identification.

¶ 49    Defendant further attacks Blanco's credibility by arguing that he had motivation to lie because Blanco and his family members were involved in other incidents involving defendant. We must note that defendant never objected to evidence of these prior incidents involving defendant during Blanco, Hernandez, and Alvarez's direct testimony and defense counsel did not cross examine these witnesses about these prior incidents. Therefore, it is disingenuous that he presents these arguments here. Furthermore, we agree with the State that these prior incidents support Blanco's identification of defendant.

¶ 50    Finally, defendant argues that the gap in time between the trial court's observation of Blanco's testimony and closing arguments – 119 days – caused the trial court's impression of Blanco's testimony to fade and that although there was no error with the trial court's actions, the

lapse in time could have affected his ability to observe and evaluate the witness. First, there is nothing in the record, and defendant has failed to bring anything to our attention, that would indicate that a four-month lapse resulted in the trial court having a lapse in memory and we will not make such an interpretation here. Second, we believe the trial court's request to review the transcript of the civilian witness testimony does not support, but belies, defendant's argument that any lapse in memory affected the outcome of this case. Therefore, this argument fails and does not support defendant's reasonable doubt argument.

¶ 51    In this case, the trial court determined the credibility of all of the witnesses, but particularly Blanco's testimony, weighed all the evidence and drew reasonable inferences therefrom and determined that defendant was guilty beyond a reasonable doubt. See *Siguenza–Brito,* 235 Ill. 2d at 228.  The trial court's determination will not be reversed simply because the defendant claims that a witness was not credible. See *Evans,* 209 Ill. 2d at 211–12. We cannot say that the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt; as such, the trial court's judgment will not be set aside. *Id*., (citing *Johnson*, 114 Ill. 2d at 190).

¶ 52    Based upon the foregoing, we conclude that the trial court's judgment should not be set aside. *Slim*, 127 Ill. 2d at 307 (trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt). The trial court was in the best position to determine Blanco's credibility, weigh the evidence, draw reasonable inferences and resolve conflicts in the evidence. *Id.*  We conclude that a rational trier of fact, examining the evidence in the light most favorable to the State, could have found defendant guilty of aggravated discharge of a firearm beyond a reasonable doubt.

¶ 53　Next defendant contends that he is entitled to a new sentencing hearing where a void *ab initio* prior conviction for aggravated unlawful use of a weapon was used to sentence him as a Class X offender for his conviction of a Class 1 offense. The State agrees that defendant should receive a new sentencing hearing.

¶ 54　The record reflects that in May 2008, after a conviction for aggravated unlawful use of a weapon (AUUW) pursuant to 720 ILCS 5/24-1.6(a)(1) (West 2008), defendant was sentenced to 3 years' imprisonment.[2]　During sentencing in this case, pursuant to the General Recidivism Provisions of 730 ILCS 5/5-4.5-95 (West 2015), defendant's 2008 AUUW conviction was used to determine his eligibility for a Class X sentence for this current conviction of aggravated discharge of a firearm.　However, our supreme court's decision in *People v. Burns*, 2015 IL 117387, ¶ 31 found, "the offense of aggravated unlawful use of a weapon, as set forth in section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, facially unconstitutional.　As a result, the provision is not enforceable against anyone." Pursuant to *Burns*, the trial court in this case should not have used defendant's 2008 AUUW conviction to determine the appropriate sentence. Therefore, we vacate defendant's Class X sentence based on his 2008 AUUW conviction, and remand for a new sentencing hearing.　Defendant shall receive credit for the time already served on the aggravated discharge conviction.

¶ 55　Due to our determination as to the third issue, we need not address defendant's remaining issue on appeal.

¶ 56　　　　　　　　　　　　　　　CONCLUSION

---

[2] It is unclear from the record how much time defendant actually served.

¶ 57     For the foregoing reasons, we affirm defendant's conviction for aggravated discharge of a firearm, but vacate his sentence and remand for a new sentencing hearing.

¶ 58     Affirmed in part; vacated in part; remanded.