2026 IL App (2d) 250178-U
No. 2-25-0178
Order filed April 7, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE VILLAGE OF HAMPSHIRE, Plaintiff-Appellee,

v.

CLARENCE E. FREEMAN, Defendant-Appellant

Appeal from the Circuit Court of Kane County.
Honorable Rene Cruz, Judge, Presiding.
No. 22-DT-448

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction of driving under the influence was supported by sufficient evidence to prove that defendant was under the influence of alcohol.

¶ 2    Defendant, Clarence E. Freeman, was charged with one count of driving under the influence of alcohol.  625 ILCS 5/11-501(a)(2) (West 2020).  Following a bench trial, he was convicted and sentenced to 24 months of court supervision.  Defendant appeals, arguing that the evidence was insufficient to prove beyond a reasonable doubt that he was under the influence of alcohol.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On May 21, 2022, police officers for the Village of Hampshire (the Village) responded to a call regarding a smoking vehicle in the parking lot of a McDonald's restaurant. Defendant, who was asleep in the vehicle with the engine running when the first officer arrived, was subsequently charged with one count of driving under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2020). Defendant waived his right to a jury trial, and the case proceeded to a bench trial.

¶ 5      At trial, the Village presented the testimony of three witnesses: McDonald's manager Niqitia Smith Garcia, Officer Joshua Marshall, and Sergeant Ryan Edwardson. Niqitia Smith Garcia testified that, on May 21, 2022, at around 5:30 p.m., she was working at the McDonald's in Hampshire. A customer came inside and said that someone in the parking lot had passed out in his vehicle, and that the vehicle was "smoking." Garcia went outside and saw a "guy in his car passed out, and the car as smoking." She attempted to wake the man, later identified as defendant, by tapping on the window and calling to him, but he did not respond, so she contacted the police. Garcia said that, while the police were on the way, defendant "ended up waking up on his own." When asked what happened after he awoke, Garcia said, "I just remember him yelling and that he got out [of the driver's seat] and got into the passenger side." Garcia stayed with the vehicle until the police arrived. In response to the Village's questions, Garcia confirmed that she never saw a second person in the vehicle, the engine was running, and there was smoke coming from the front of the vehicle.

¶ 6      Joshua Marshall testified that he worked as a patrol officer for the Hampshire Police Department on the day in question. On May 21, 2022, he was finishing a twelve-hour shift that ended at 6:00 p.m. when he responded to the call placed by Garcia. He said that, when he arrived on the scene, he saw a McDonald's employee pointing at a vehicle. Marshall noticed that the

engine was running, "and there was smoke coming from underneath the hood." He saw defendant sleeping in the front passenger seat. Marshall first tapped on the window to wake defendant. When he got no response, he banged his fist on the window. After defendant awoke, Marshall tried to alert him to the smoke. Marshall then "opened up the door because at first [he] didn't get a response."

¶ 7 Marshall suggested that defendant get out of the vehicle, and defendant agreed. Before exiting the vehicle, defendant turned off the engine. Marshall said that defendant struggled to turn off the ignition, succeeding "after a couple attempts" to do so. Marshall then talked to defendant about the smoke coming from the vehicle and told defendant that his breath smelled like alcohol. Marshall asked defendant for identification, but defendant stated that he was in the passenger seat and did not need to provide identification. Marshall noted that, during the conversation, defendant leaned against the vehicle for support and swayed from side to side. Marshall asked defendant if he had been drinking, and he said yes. Marshall also stated that, when he first approached the vehicle, he saw a Stella Artois beer can on the ground outside of the vehicle. He did not recall seeing anything inside the vehicle. Marshall said that, based on his observations at the scene, he concluded that defendant was unfit to operate a motor vehicle. When asked whether defendant was cooperative or uncooperative, Marshall said, "He wanted to debate. *** I can't say he was completely uncooperative, but I'm not going to say he was cooperative."

¶ 8 On cross-examination, Marshall confirmed that he did not photograph the beer can or collect it as evidence. He had never met defendant before and did not know how he typically walked and talked. He did not conduct or observe any field sobriety tests. Marshall said that, according to his recollection, defendant turned off the engine and exited the vehicle before Sergeant Edwardson arrived.

¶ 9    Sergeant Ryan Edwardson testified that, on May 21, 2022, he was on patrol duty while also managing patrol officers. He responded to the call about a smoking vehicle in the McDonald's parking lot at around 5:40 p.m. When he arrived, he saw Marshall speaking to defendant next to the vehicle. Edwardson said that the police department did not have any video cameras or body cameras at that time. In response to a question about whether he asked defendant for identification, Edwardson said, "Initially, he told me that he wasn't going to provide it, and he told me that he was going run us [through a database]." Defendant ultimately provided a state ID card. Edwardson then identified defendant in the courtroom.

¶ 10    Edwardson recalled making the following observations of the vehicle: there was one can of Stella Artois beer outside the vehicle and another can inside the vehicle, on the floor of the passenger side; he saw "what appeared to be vomit on the driver's side on the floorboard and on the inside of the car"; and "[t]here was a whitish-color smoke coming out from underneath the hood." When asked whether the vehicle was running when he arrived, Edwardson said yes.

¶ 11    Asked what he observed about defendant at the time, Edwardson said that he saw defendant leaning against his vehicle for support; defendant's eyes were "bloodshot and glassy"; he had "the odor of alcohol emanating from his breath"; and when the officers asked him to step away from the vehicle for safety, his looked unsteady when he walked. Edwardson said that, when asked who had been driving the vehicle, defendant informed the officers that his cousin was the driver and that he was inside the McDonald's. Defendant refused to go inside with the officers to identify the cousin.

¶ 12    On cross-examination, Edwardson confirmed that defendant was not the registered owner of the vehicle and that he never saw anyone drive the vehicle. He said that the fire department

responded to the scene and "poured a bunch of water" on the smoking vehicle. The vehicle was later towed from the scene.

¶ 13    Both Marshall and Edwardson testified that they had responded to numerous incidents involving intoxication and that they had been trained in driving under the influence enforcement and field sobriety testing. Edwardson originally testified that he offered defendant a breathalyzer test. However, after reviewing his report, he conceded that he made no mention of offering defendant a breathalyzer. Neither officer asked defendant to perform field sobriety tests.

¶ 14    Upon the conclusion of the Village's presentation of its case, defendant made a motion for a directed finding. Defendant argued that the Village failed to prove he was under the influence of alcohol, "given the fact that there's no allegation of bad driving, there are no fields, no blows, no opportunity to do those, and there's just really a total lack of direct evidence of impairment in this case." Defendant also asserted that there were "some discrepancies" in the testimony provided by the police officers and specifically pointed to the fact that Marshall said the vehicle's engine had been turned off before Edwardson arrived, while Edwardson testified that the engine was still running when he arrived. In response, the Village asserted that the testimony of the officers sufficiently established that defendant was in actual physical control of the vehicle while under the influence of alcohol. The court denied the motion.

¶ 15    After hearing closing arguments, the court found defendant guilty. The court recounted the evidence and then explained its decision as follows:

"The standard here, as the charge is a DUI under the 501(a)(2) [*sic*]. To prove a violation of subsection (a)(2), the state—city in this case—must show the defendant was actually impaired by the consumption of alcohol. A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so

- 5 -

impaired as to reduce his ability to think and act with ordinary care. That's citing to *People v. Nunez*, which is 143 Ill. App. 3d [1072], a [S]econd [D]istrict case from 1986.

It's highly unusual. In most DUI arrests we would have the three phases, which would be the vehicle in motion phase, the interaction with the individual phase, and then the performance on any tests.

In this particular case, we don't have any vehicle in motion. However, what we do have is we do have operation and control of the vehicle. We have a vehicle that's in a dangerous condition as well.

Secondly, we have the interaction with the arrestee, the odor, the eyes, the balance issues, the desire to debate, but more importantly, the inability to recognize the circumstances under which [defendant] was in.

He's in a vehicle that's basically smoking. Sergeant Edmundson [*sic*] described that the fire department had to come and extinguish what was happening with this particular vehicle. After waking up in the driver's seat, the only response to being in basically a burning vehicle was to get out of the driver's seat and make a motion to get into the passenger seat and then fall back asleep to the point where, when the officer arrived, he was already back asleep at that time.

The third phase would be the field sobriety tests. Again, the officer is unclear whether he asked for it or not. There obviously are no field sobriety tests, so it's as if they were never—they were refused or not done. Those would be the appropriate steps to take. It's unclear whether it was offered or not.

The question for the court is whether [defendant's] mental and physical faculties were so impaired as to reduce his ability to think and act with ordinary care.

Based on the evidence that's been provided, most importantly the failure to recognize the seriousness of the situation he was in, inside of a burning vehicle, just to wake up and move to another chair, and the admission to drinking alcohol, the odor of alcohol, the [c]ourt does believe it's been proven beyond a reasonable doubt that [defendant] was driving under the influence as defined in the statute on May 21st of 2022. There will be a finding of guilty with respect to the only count."

¶ 16    On April 25, 2025, the trial court heard argument on defendant's motion for a new trial. In denying the motion, the court stated that defendant failed to act with ordinary care and highlighted the fact that, in response to being alerted to the smoking engine that was ultimately extinguished by the fire department, he merely moved from the driver's seat to the passenger's seat of the vehicle. The court also noted that sobriety tests "are preferable, but they are not necessarily required." The court went on to sentence defendant to 24 months of court supervision. Defendant timely appealed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was under the influence of alcohol. He therefore asks this court to reverse his conviction for driving under the influence. In response, the Village argues that the evidence was sufficient to support the conviction. We agree with the Village.

¶ 19    When reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The critical inquiry is whether the evidence could reasonably support

a guilty finding, regardless of whether the evidence is direct or circumstantial. *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. See *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). "Because the trier of fact is best positioned to judge the credibility of the witnesses and resolve disputes in the evidence, its decision is entitled to great deference." *Lissade*, 403 Ill. App. 3d at 612. We will reverse the defendant's conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 20 Here, the Village needed to prove, beyond a reasonable doubt, the elements of the offense detailed in Section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2020)):

> "(a) A person shall not drive or be in actual physical control of any vehicle within this State while:
>
> ***
>
> (2) under the influence of alcohol[.]"

On appeal, defendant does not challenge the trial court's finding that he was in actual physical control of the vehicle; he only challenges the sufficiency of the evidence as to whether he was under the influence of alcohol.

¶ 21 As the First District has explained:

> "A defendant is under the influence of alcohol when, as a result of consuming alcohol or any other intoxicating substance, the defendant's ' "mental or physical faculties are so impaired as to reduce [the] ability to think and act with ordinary care." ' [Citation.] To be under the influence of alcohol, a defendant must be under the influence to a degree that

- 8 -

renders her incapable of driving safely. [Citation.] Whether a defendant was intoxicated is a question of fact to be resolved by the trial court. [Citation.]

To establish intoxication, the State is not required to present scientific proof, such as a breath or blood alcohol test; it may rely solely on circumstantial evidence, such as the credible testimony of the arresting officer. [Citations.] The trier of fact may consider the officer's observations, such as the defendant's conduct, speech, or appearance; the odor of alcohol on the defendant's breath; and testimony that the defendant failed a field sobriety test. Any evidence of alcohol consumption is relevant to the issue of impairment." *People v. Groebe*, 2019 IL App (1st) 180503, ¶¶ 57-58.

¶ 22    Factors supporting a finding that a motorist was under the influence include (1) the odor of alcohol on his or her breath (*People v. Tatera*, 2018 IL App (2d) 160207, ¶ 31); (2) "glossy" eyes (*People v. Hewitt*, 212 Ill. App. 3d 496, 504 (1991)); and (3) the motorist's admission to consuming alcohol (*People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 50). All of these factors were present here. In addition, the officers observed open beer cans and vomit, defendant used his vehicle to support himself while standing, and he was unsteady when he walked. The trial court further found that defendant's conduct proved that his impairment reduced his ability to think and act with ordinary care because, when alerted to the fact that his vehicle's engine was smoking, defendant merely moved from the driver's seat to the passenger's seat and fell asleep again while the engine continued running and smoking. In light of these facts and circumstances, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of being under the influence of alcohol while in actual physical control of the vehicle.

¶ 23    Defendant argues that the testimony of the police officers lacked credibility because their testimony was uncorroborated by physical or video evidence, they could not recall some details

while on the stand, and they differed on some points, such as whether the engine was still running when Edwardson arrived. We cannot agree. The trial court clearly found the witnesses to be credible and—as the Village points out in response—any minor discrepancies are immaterial where the testimony of all three witnesses fully supported the essential facts relied on by the trial court.

¶ 24                        III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26    Affirmed.